IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE HINTON, | ) | CASE NO. 1:07 cv 3384 |
| | ) | |
| Plaintiff, | ) | JUDGE OLIVER |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Wallace Hinton's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On December 19, 2002 and January 22, 2003, Plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance benefits, respectively, alleging a

disability onset date of July 1, 2002 due to limitations related to black lung disease, sarcoidosis, and schizophrenia.  On January 25, 2006, after a hearing, Administrative Law Judge ("ALJ") Fenton H. Hughes determined Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work and, therefore, was not disabled (Tr.22-23).  Plaintiff was represented by counsel before the Commissioner.  Plaintiff now proceeds pro se and appeals the decision denying him benefits.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on October 29, 1953 (age 52 at the time of the ALJ's determination), Plaintiff is an "individual closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563, 416. 963.  Plaintiff last completed high school and has past relevant work in temporary factory and construction work (Tr. 86, 92).

### B.  Medical Evidence

On October 3, 2002, Plaintiff was admitted to the Veterans' Administration Hospital ("VA") after reporting pain in his left armpit and mild chest pain (Tr. 431, 434, 441, 491).  The doctor noted Plaintiff's reported cocaine use, as recent as the previous week (Tr. 441, 491).  The doctor also recorded Plaintiff's medical history of schizophrenia, which was diagnosed in 2000, and sarcoidosis, which was diagnosed in the 1980s (Tr. 434, 441, 491).  Chest x-rays were consistent with sarcoidosis, which was likely the cause of his dyspnea (Tr. 440, 442).  Plaintiff was discharged on October 4, 2002 (Tr. 490).  Plaintiff returned to the VA later in October for shortness of breath and was referred for pulmonary testing (Tr. 414-16, 492).

On November 25, 2002, Plaintiff presented to the VA stating that he had schizophrenia and that he had recently been drinking four 24-ounce beers every other day (Tr. 413).  Plaintiff said that he had a long history of depression exacerbated by his drug and alcohol use (Id.). Plaintiff reported that he had a depressed mood and increased irritability and that he heard voices, but he denied suicidal or homicidal ideation (Id.).  Plaintiff said that he underwent treatment for his addiction in 1996 and 2000, when his depressive and psychotic symptoms resolved successfully with sobriety (Id.).  After a mental status examination, the doctor noted that the previous diagnosis was to rule out substance-induced hallucinations and that it was felt that Plaintiff's psychiatric symptoms before admission were likely substance induced (Tr. 412). Plaintiff's previous medications were discontinued and he improved once sobriety was established without psychotropic treatment (Id.).  The doctor diagnosed alcohol dependence, polysubstance abuse, depression, and psychosis not otherwise specified, recommended substance abuse treatment, and increased his dosage of Paxil (Id.).

On January 10, 2003, Plaintiff was admitted to the VA at his request after he reported that he had been abusing alcohol and cocaine and had been having auditory hallucinations telling him to kill himself (Tr. 332, 479).  Plaintiff was admitted to the substance abuse program at the VA and was diagnosed with substance-induced mood disorder with depressive features and hallucinations and assigned a global assessment of functioning ("GAF") score of 35 (Tr. 390, 409).  The doctor concluded that Plaintiff's psychotic symptoms appeared to be induced from substance abuse, rather than schizophrenia (Tr. 409).  Plaintiff said that he had last used cocaine the day before, had last consumed alcohol that morning, and that he used crack three days a week (Tr. 407).  In an assessment on January 11, 2003, Plaintiff was  assigned a GAF score of 30 and

diagnosed with polysubstance dependency, including cocaine abuse, opiate dependence, and nicotine dependence (Tr. 399). On January 13, Plaintiff reported that he was feeling well with no suicidal ideations (Tr. 392). Plaintiff's speech was coherent, organized and goal-directed and his insight and judgment were fair (Tr. 386). Plaintiff was discharged on January 23, 2003 (Tr. 332).

In a note dated January 29, 2003, Emmanuel Tuffuor, M.D., verified Plaintiff's diagnosis of hypertension, scoliosis, and depression (Tr. 129).

State agency physician Robert E. Norris, M.D., reviewed the record on February 22, 2003 and completed a physical RFC assessment, considering Plaintiff's history of sarcoidosis (Tr. 137-44). Dr. Norris opined that Plaintiff could perform medium exertional work, could occasionally climb ladders, ropes and scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 138-39, 141). Dr. Norris noted that he limited Plaintiff to medium work based upon his subjective allegations because Plaintiff's pulmonary function studies were normal (Tr. 145).

Plaintiff underwent a consultative psychological evaluation with Dr. Herschel Pickholtz at the request of the state agency on April 4, 2003 (Tr. 146). Plaintiff said that he felt unable to work and that he was excessively tired and slept all of the time (Id.). Plaintiff denied significant drug and alcohol activity, which Dr. Pickholtz noted was inconsistent with his medical records (Tr. 148). Dr. Pickholtz observed that Plaintiff's speech velocity was below average and that Plaintiff could not tell him the simplest of information (Tr. 149). Dr. Pickholtz believed Plaintiff was engaging in a significant amount of exaggeration (Id.). Dr. Pickholtz observed that the last time Plaintiff was evaluated, while in prison, no suggestion of cognitive difficulties was made,

which was inconsistent with his current presentation (Id.). According to Plaintiff, he had massive psychiatric problems, but Dr. Pickholtz observed that the records showed he had done fairly well after he was given medications for his addiction (Tr. 150). Dr. Pickholtz noted that unless there was evidence of organic damage due to Plaintiff's addictions, he did not believe that Plaintiff's mental status examination was an accurate estimate of his true levels of functioning (Id.). Dr. Pickholtz diagnosed a long history of schizoaffective difficulties induced by Plaintiff's alcohol and drug usage, mixed polysubstance dependence up until recently, which Plaintiff lied about and fabricated, and mixed personality involving anti-social and addictive features along with tendencies toward exaggeration during the evaluation (Tr. 150-51). Dr. Pickholtz found it difficult to assess Plaintiff's GAF score due to his exaggeration (Tr. 151). Although Plaintiff presented at a score of 40, Dr. Pickholtz estimated that his actual score was at 65 (Id.). Dr. Pickholtz further concluded that Plaintiff had exaggerated the severity of all of his work-related abilities (Id.).

In April 2003, Plaintiff reported that he was consuming alcohol one to two times per week, but that he had not used cocaine since January (Tr. 315).

State agency psychologist Nancy E. McCarthy, Ph.D., reviewed the record in May 2003 and evaluated Plaintiff's schizophrenia, personality disorder, and substance abuse addiction under the listings (Tr. 152). Dr. McCarthy opined that Plaintiff did not have an impairment that met or equaled any listed impairments and that he retained an RFC for simple, routine tasks (Tr. 168). John M. Malinky, Ph.D., affirmed Dr. McCarthy's opinions on July 7, 2003 (Tr. 152, 169).

On May 19, 2003, Plaintiff went to the VA after a suicide attempt, reporting that he had jumped off a porch roof two days prior (Tr. 311). Plaintiff had been drinking daily and using cocaine four times weekly (Tr. 300). Psychiatrist Rim S. Ibrahim, Psy. D., diagnosed alcohol dependence and polysubstance abuse and assigned a GAF score of 30 (Tr. 302). Dr. Ibrahim recommended hospitalization for medication adjustment and substance abuse rehabilitation (Id.). A May 21 assessment showed that Plaintiff's symptoms stabilized with medications and lack of substance use (Tr. 287). Plaintiff was discharged on May 27 to a substance abuse program, from which he was discharged on June 10 (Tr. 232-33, 265, 269-73, 657). On June 18, 2003, Plaintiff was discharged from outpatient substance abuse treatment for lack of follow-up (Tr. 227).

In July 2003, Plaintiff underwent an initial psychiatric evaluation at North East Ohio Health Service ("NEOHS") to begin substance abuse services there (Tr. 510). On examination, Elaine Campbell, M.D., found that Plaintiff was cooperative, alert and oriented; his affect was constricted and his mood was depressed; he had no suicidal or homicidal ideation; he had paranoid delusions; his thought process was organized; his insight was limited; and his judgment was fair (Tr. 513). Dr. Campbell assigned a GAF score of 45 and diagnosed psychotic disorder, rule out schizophrenia, post traumatic stress disorder, and cocaine and alcohol dependence (Tr. 514). Dr. Campbell recommended Plaintiff's involvement in the dual diagnosis program, prescribed increased medication doses, and advised follow up in four weeks (Tr. 515).

In July 2003, Plaintiff began attending group substance abuse therapy at NEOHS and continued to attend through January 2004 (Tr. 516, 582-646). In September, November, and December 2003, the counselor noted on several occasions that Plaintiff had been sober for 7 days

or less (Tr. 592, 594, 596, 598, 604, 626). On January 39, 2004, the counselor noted sobriety for 1-3 months (Tr. 582).

On September 13, 2003, Dr. Tuffuor completed a medical source statement concerning Plaintiff's mental capacity and opined that Plaintiff had poor to no ability to follow work rules, use judgment or maintain concentration for 2-hour segments, or to understand, remember and carry out detailed job instructions (Tr. 127). Dr. Tuffuor thought it was very doubtful that Plaintiff could complete a normal workday (Tr. 128).

Also in September 2003, Plaintiff complained of low back pain and said that he had been clean since July 2003 (Tr. 213). The doctor diagnosed lumbago and recommended physical therapy (Tr. 214). In November 2003, Plaintiff went to the pulmonary clinic and reported that he stopped taking Prednisone in September (Tr. 208). After examination, the doctor assessed moderate symptoms and recommended Prednisone if there was objective evidence of active disease (Tr. 211). In December 2003, Plaintiff told Dr. Campbell that he had not had alcohol for two weeks and was hoping to be sober for 90 days (Tr. 494). In January 2004, pulmonary function testing was normal (Tr. 185).

In May 2004, Plaintiff was terminated from NEOHS because he was pursuing alternative therapy (Tr. 522). Records indicate that Plaintiff had been able to maintain stability without hospitalizations but that an unresolved issue at the time was substance abuse continuation (Id.).

On July 23, 2004, Plaintiff underwent a physical capacity evaluation with Lidiya Kanarsky, M.S. (Tr. 651). Plaintiff was unable to demonstrate lifting and carrying weight due to sarcoidosis and increased lower back pain (Tr. 649). Plaintiff reported that he had unlimited sitting ability and a standing tolerance of less than 5 minutes (Id.).

In April and May 2005, Plaintiff went to the emergency room for chronic back pain and a sprained back (Tr. 751, 761).

On July 1, 2005, Plaintiff was admitted to the VA after reporting that he was depressed and that he had been having more suicidal thoughts since he had stopped taking his pills (Tr. 742-43). He said that he had last used crack the previous day and alcohol that morning (Id.). Plaintiff was diagnosed with polysubstance dependency, substance-induced mood disorder and questionable psychosis, and assigned a GAF score of 30 (Id.). Psychiatrist Linda Bond, Psy. D., concurred with the primary diagnosis and did not feel that there was any evidence, by examination or history, of schizophrenia (Tr. 721). Plaintiff was discharged on July 8, 2005 to the VA substance abuse program (Tr. 710, 713). Plaintiff was discharged from inpatient treatment on July 28, 2005 (Tr. 693).

On August 17, 2005, Plaintiff went to the VA with complaints of chronic low back pain and shortness of breath after going up one flight of steps (Tr. 666). Plaintiff reported that he had last used alcohol and illegal substances in March (Id.). Plaintiff's examination was normal (Tr. 667). The doctor recommended physical therapy for his lower back pain and evaluation for a left ankle brace (Id.). In August, x-rays of Plaintiff's lumbar spine showed minimal anterior lipping of L5 with narrowing of the L5-S1 intervertebral disc space posteriorly and no compression fracture (Tr. 653).

On September 14, 2005, Plaintiff returned to the substance abuse program at the VA, reporting that he wished to have his own place to live and that he had applied for housing assistance (Tr. 788). On September 22, a psychiatrist at NEOHS diagnosed schizoaffective disorder and polysubstance dependence in early full remission (Tr. 810). On September 30,

Plaintiff was discharged from continued services at the VA for non-participation (Tr. 788). In October, Plaintiff reported at NEOHS that he was doing better (Tr. 799). On examination, Plaintiff had normal speech and thought processes and no suicidal or homicidal ideations (Tr. 800). Plaintiff was assigned a GAF score of 55 (Id.).

On November 10, 2005, Plaintiff complained of low back pain at the VA and reported that it had become significantly worse over the last week (Tr. 778, 780-81). On examination, Plaintiff had full range of motion, full strength, and no motor or sensory deficits (Tr. 781). However, Plaintiff had tenderness across his back (Tr. 780). The doctor concluded that Plaintiff's pain was consistent with his previous diagnosis of lumbar disc disease and with symptoms related to sarcoidosis, since Plaintiff was off his medications (Tr. 781). The doctor prescribed medications for Plaintiff's pain and sarcoidosis and recommended follow up with a primary care physician (Id.).

### C. Hearing Testimony

Plaintiff testified at the administrative hearing that had been sober since January 2005 (Tr. 846). He said that he had experienced hallucinations since he was a child and that he still gets paranoid when he is in crowds of people (Tr. 847-48). Medication helped his paranoia (Tr. 852). Plaintiff said that his memory was bad and he could not stay focused, which were effects of his alcohol abuse according to his doctor (Tr. 849). Plaintiff testified that he could not work because he had a bad lung and had difficulty breathing (Tr. 850). Medication helped his breathing and cold aggravated it (Tr. 851). Plaintiff also reported that he had left ankle problems and walked with a cane, and had trouble with his back (Tr. 850-52).

Medical Expert ("ME") Dr. Leo Van der Reis testified that besides Plaintiff's substance abuse, he had medical problems of sarcoidosis, ankle fractures, and hypertension (Tr. 853). It was debatable how much of Plaintiff's shortness of breath was attributable to the sarcoidosis (Id.). Dr. Van der Reis affirmed the state agency physician's opinion that Plaintiff could perform medium exertional work (Tr. 854).

ME Dr. Thomas Singer also testified at the hearing (Tr. 857). He testified that Plaintiff had not had a substantial period of substance free behavior since his alleged onset date (Tr. 857). He believed that Plaintiff was someone who used substances heavily and then stopped for relatively short periods of time, only to resume again (Tr. 858). When Dr. Singer was asked whether Plaintiff had a mental disorder separate from his substance disorder that would prevent him from working, Dr. Singer responded that he could only point to the fact that when Plaintiff was not using substances and was taking his medication, he did significantly better (Id.). Dr. Singer stated that he could not find Plaintiff disabled separate from his substance abuse (Tr. 859). Dr. Singer pointed out that the diagnosis of schizoaffective disorder was provisional, which meant that it was not actually established (Tr. 860). Dr. Singer stated that he could not establish a psychiatric impairment aside from substance abuse and that the best he could say was that Plaintiff had a personality disorder with paranoid features (Tr. 861). Dr. Singer concluded Plaintiff had a limited ability to interact with the public in a work-like situation (Tr. 866). He testified that Plaintiff would need to be sober for 12 months in order to be considered baseline (Tr. 870).

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE to consider an individual of Plaintiff's age, education and vocational background who could

perform medium work relatively independent of supervisors and coworkers with only occasional public contact and no climbing of ladders (Tr. 869, 876). The VE responded that such an individual could perform the light exertional job of housekeeper and that there were 1.5 million such jobs nationally (Tr. 876).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's

determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

In his pro se brief, Plaintiff argues that he should be found disabled because his substance abuse has ended, yet he continues to be disabled. According to Plaintiff, the ALJ found that Plaintiff was disabled but that he needed to be substance free for a longer period of time. Plaintiff maintains that he has been substance free since August 2005 and thus his substance abuse is no longer a factor, making him disabled under 42 U.S.C. §§ 416(i) and 423 and 42 U.S.C. § 1381. In response, the Commissioner argues that the ALJ reasonably concluded Plaintiff's substance abuse was a contributing factor material to the determination of disability. The Commissioner asserts that the ALJ did not err in concluding that if Plaintiff's substance abuse was not considered, he would not be disabled. The Commissioner's arguments are well taken.

The ALJ's opinion demonstrates compliance with 20 C.F.R. §§ 404.1535 and 416.935. Under these provisions, if an ALJ finds that a claimant is disabled, the ALJ is required to

consider whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *See id.* The ALJ found that Plaintiff's impairments, including his substance use disorder, meet the criteria of a listed impairment and thus, Plaintiff is under a disability as defined in the Social Security Act (Tr. 19). The ALJ also found that if Plaintiff stopped the substance abuse, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and therefore, Plaintiff would continue to have a severe impairment or combination of impairments (Id.). However, the ALJ found that if Plaintiff stopped the substance abuse, Plaintiff would not have an impairment that meets or equals a listed impairment and would retain an RFC for medium work limited to occasional climbing and occasional public contact, and working relatively independently of supervisors and coworkers (Tr. 20). Thus, the ALJ concluded that Plaintiff's substance use was a contributing factor material to the determination of disability.

    The ALJ's written decision reflects that he considered the record as a whole, provided a thorough credibility assessment of Plaintiff's allegations, and reasonably concluded that the evidence demonstrated Plaintiff could perform a limited range of medium work if he stopped his substance use. The ALJ noted Plaintiff's treatment records over time, including his January 2003 hospitalization after having suicidal ideations (Tr. 18). The ALJ noted that Plaintiff was stabilized on medication (Id.). The ALJ noted the psychologist consultative examiner's opinion that Plaintiff's mental difficulties were secondary and consistent with addiction and that Plaintiff appeared to be engaging in significant exaggeration (Id.). The ALJ considered Dr. Tuffuor's September 2003 assessment in which he indicated Plaintiff had a poor attention span and would have difficulty dealing with work stresses (Id.). The ALJ also considered Plaintiff's testimony,

13

including testimony about his past use of substances, that he heard voices since he was young, and that he had trouble with his memory and focusing (Tr. 19).

The ALJ concluded that Plaintiff was not fully credible with respect to the alleged limiting effects of his impairments and symptoms (Tr. 20).[1] In support of this conclusion, the ALJ noted that although Plaintiff has had several decompensations while abusing substances, he improved and had much better functioning during times when he had gone through detox (Tr. 21). The ALJ also pointed out that on multiple occasions, Plaintiff has not been compliant with his medications and group therapy (Id.). The ALJ credited the opinion of ME Dr. Singer, who did not believe that Plaintiff clearly had a psychotic disorder because it appeared that his symptoms and limitations were related to Plaintiff's substance use (Tr. 19). The ALJ noted that Dr. Singer's opinion was consistent with treatment records from the VA (Id.). There is substantial evidence to support the ALJ's determination.

Placing the records from Dr. Tuffuor aside, not a single doctor who evaluated Plaintiff's mental condition assessed a mental impairment separate from Plaintiff's substance use. In October 2002, a doctor at the VA noted that Plaintiff's symptoms were likely substance induced and that his symptoms improved once sobriety was established without psychotropic treatment

---

[1] Plaintiff indirectly address his physical impairments in his brief by stating that he is a fall risk and that with his physical condition, he would be seen as a liability to an employer. Plaintiff has complained of low back, ankle, and breathing problems. The ALJ adequately addressed these issues in his written decision and found Plaintiff's allegations regarding the limiting effects of these impairments not fully credible. The ALJ pointed out that treatment notes showed that use of an ankle brace seemed to eliminate most of Plaintiff's instability issues (Tr. 20). The ALJ noted that although Plaintiff alleges breathing problems, x-rays and other testing in October 2002 and January 2004 showed that Plaintiff's lung volumes were within normal limits and that he had normal carbon monoxide diffusing capacity (Id.). With respect to Plaintiff's low back problems, the ALJ noted that x-rays showed only minimal osteoarthritic changes of the lumbar spine (Id.).

(Tr. 412). In January 2003, a VA doctor again noted that Plaintiff's symptoms appeared to be induced from substance abuse, rather than schizophrenia, and that Plaintiff's symptoms improved once sobriety was established (Tr. 409). In April 2003, Dr. Pickholtz observed that Plaintiff seemed to be engaging in significant exaggeration because although Plaintiff presented himself as having massive psychiatric problems, the last time Plaintiff had been evaluated, while in prison, no suggestion of cognitive difficulties was made (Tr. 149). Dr. Pickholtz observed that the records showed Plaintiff had done fairly well after taking medication for his addiction (Tr. 150). Dr. Pickholtz felt that Plaintiff's schizoaffective difficulties were induced by his alcohol and drug usage (Id.). In May 2003 Plaintiff went to the VA after a suicide attempt and significant alcohol and cocaine use (Tr. 311). Plaintiff's symptoms stabilized with medications and lack of substance use (Tr. 287). Plaintiff received substance abuse services from NEOHS from July 2003 through May 2004, when he was terminated because he was pursuing alternative therapy (Tr. 522). Record notes indicate that Plaintiff had been able to maintain stability without hospitalizations, but that his substance abuse was an unresolved issue at the time of termination (Id.). VA records from July 2005 show that a psychiatrist believed Plaintiff had substance-induced mood disorder and did not feel that there was any evidence by examination or history of schizophrenia (Tr. 721). NEOHS records from October 2005 reflect merely a *provisional* diagnosis of schizoaffective disorder (Tr. 800). At the administrative hearing, ME Dr. Singer testified that a provisional diagnosis means that the diagnosis is not really established (Tr. 860). Dr. Singer testified that he could not establish that Plaintiff had a psychiatric impairment aside from substance abuse (Tr. 861). Dr. Singer explained that Plaintiff is not psychotic when he is not taking substances and when he is taking his medication (Id.).

Dr. Tuffuor provided two records, neither of which mention Plaintiff's substance abuse despite other records indicating that Plaintiff was using substances at the time of Dr. Tuffuor's evaluations of Plaintiff's impairments. Dr. Tuffuor first provides a note from January 2003 that merely verifies Plaintiff's diagnoses of hypertension, scoliosis, and depression, and does not mention Plaintiff's substance use (Tr. 129). Records from the VA in January 2003 reflect that Plaintiff was using alcohol and cocaine at that time (Tr. 409). Dr. Tuffuor also provides a September 2003 record in which he opined that Plaintiff had poor to no ability to follow work rules, use judgment or maintain concentration for 2-hour segments, or to understand, remember and carry out detailed job instructions (Tr. 127). Dr. Tuffuor thought it was very doubtful that Plaintiff could complete a normal workday (Tr. 128). Again, noticeably absent is any reference to Plaintiff's substance use, yet records from NEOHS in September 2003 noted that Plaintiff had been sober for 7 days or less during that time (Tr. 630). It is unclear, due to the absence of any reference to Plaintiff's substance use in Dr. Tuffuor's records, whether the mental limitations assessed by Dr. Tuffuor took into account Plaintiff's substance use or whether they were meant to reflect a mental impairment separate from Plaintiff's substance use. Thus, Dr. Tuffuor's records fail to establish that Plaintiff has a mental impairment separate from his substance use.

The record comports with the observation of Dr. Singer that Plaintiff had not had a substantial period of substance free behavior from the time of his alleged onset date to the time of the hearing (Tr. 857). Plaintiff's use of alcohol and/or drugs is noted on multiple occasions throughout this time period, including, but not limited to, October and November 2002; January, May, July, September, November, and December 2003; May 2004; and July 2005 (Tr. 311, 409, 413, 441, 491, 510, 592, 594, 596, 598, 604, 626, 742-43). At the time of the administrative

hearing in December 2005, Plaintiff had maintained sobriety for, at most, five consecutive months. Dr. Singer testified that Plaintiff would likely need a 12-month substance free period with treatment and medication in order for his psychological status to be considered baseline (Tr. 870). As explained previously, the ALJ appropriately credited Dr. Singer's opinion. Accordingly, the Court concludes that the ALJ did not err concluding that Plaintiff's substance use was a contributing factor material to the determination of disability with respect to Plaintiff's December 19, 2002 and January 22, 2003 applications for Supplemental Security Income benefits and Disability Insurance benefits, respectively.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be AFFIRMED.

                                                    s/ Kenneth S. McHargh
                                                    Kenneth S. McHargh
                                                    United States Magistrate Judge

Date: July 1, 2008

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).